THE PRESIDENT AND DIRECTORS
OF THE UNION BANK OF MARYLAND          } DECEMBER TERM, 1849.
vs.
JOHN D. KERR AND JOHN GLENN.

[BILLS OF INTERPLEADER—PRACTICE—ELECTION.]

A BILL of interpleader ought to be filed before or immediately after the commencement of proceedings at law, and should not be delayed until after a verdict or judgment has been obtained.

The complainants filed their bill, requiring the defendants, K. and G. to interplead and settle their respective rights, as well to a sum of money for which K. had recovered judgment at law in an action of assumpsit, as also to certain promissory notes and bills of exchange, for which K. had commenced an action of trover, which was still depending in the County Court. HELD—

That the complainants should not be precluded from the right to compel the defendants to interplead, so far as concerns the subjects of the action of trover, because they have in the same bill, asked the same relief with reference to the subject of the action of assumpsit, in regard to which they come too late.

Relief will not be refused to a party, with reference to another and a distinct subject, because he has associated it in the same bill, with matter in regard to which he is not entitled to relief, on account of having delayed his application too long.

Where a bill prays *for relief*, by way of injunction, and does not pray *for the process* of injunction, the process cannot be granted.

If a party elects to proceed at law, his bill will be dismissed, and if he elects to proceed in equity, he will be restrained from further prosecuting his suit at law, without leave of this court first had and obtained.

[The bill in this case was filed on the 4th of August, 1849, by the Union Bank, and states, that on the 25th of July, 1846, Edward M. Kerr, assigned to the bank, as collateral security for all his liabilities to. it, certain promissory notes, a list of which, together with the assignment, is filed with the bill. That the bank proceeded to collect said notes and apply the proceeds to discharge said liability, which was effected in the month of December, 1846. That a portion of said notes remained in the possession of the bank uncollected. That on the 21st of August, 1846, said Edward M. Kerr assigned to the defendant, John D. Kerr, all the notes deposited by him with the bank for collection, subject to the right of the bank to appropriate so much of the proceeds, as might be required to pay a certain note of

Talbot Jones & Co. in favor of said Edward, and indorsed by him to the bank for $1,341 82. Said assignment also authorized and directed the bank to pay over to said John D. Kerr, the surplus of said proceeds, or, if so required, to hand over to him whatever notes remained unpaid at the time of such request, on payment to the bank of the balance, if any, due on said note of Talbot Jones & Co. The same instrument also assigned to said John D. Kerr, said note of Talbot Jones & Co., upon its payment to the bank out of said collections, or by said John, in whole or in part, a copy of this assignment is also filed with the bill. The bill then admits that the bank received notice of this assignment on the 22d of August, 1846. That it was willing to deliver up to said John, the aforesaid notes upon his payment of the balance due the bank by said Edward, at the date of said assignment, and of said note of Talbot Jones & Co., and a certain bill of exchange on Appler & Willis, for $238 92, but that said John never offered to pay to the bank said balance, at any time before its extinguishment in December, 1846, as above stated. The bill further states that said Edward failed and stopped payment on the 21st of August, 1846, and on the 4th of May, 1847, applied for the benefit of the insolvent laws, and received his final discharge thereunder, on the 29th of September, 1847, and that John Glenn was appointed his permanent trustee. That, in the month of September, 1846, notice was given to the bank, by George M. Gill, Esq. as attorney for a certain Moses Potter, not to deliver said notes to the said John, or any other assignee of said Edward, he, said Gill, insisting that they were the partnership effects, which said Edward was enjoined from disposing of, by an injunction issued out of this court, on the application of said Potter. That on the 1st of February, 1847, said Gill demanded that said notes should be delivered up to him, as partnership effects, he having been appointed by this court a receiver to take into his possession all the assets and effects of the said Edward M. Kerr.

That on the 24th of April, 1847, a demand was made on the bank for said notes, by said John D. Kerr, accompanied with

40*

an offer to pay the claim of the bank, if it had any thereon.  The bill admits, that at the date of this demand, the bank had no claim on said notes, but refused to deliver them up to said John, by reason of the notice and demand of the said Gill, the bank not knowing which of the claimants was legally entitled thereto. The bill further states, that said John D. Kerr, on the 28th of April, 1847, instituted an action of trover against the bank to recover these notes, and damages for their detention, and a copy of the declaration in said action is filed with the bill.    That on the 29th of April, 1847, an attachment upon a judgment, in an action in which a certain Sampson Tams was plaintiff, and the said Edward M. Kerr, defendant, issued out of the Circuit Court of the United States, for the district of Maryland, and was laid in the hands of the bank and of George M. Gill and others, as garnishees of said Edward M. Kerr, which proceeding is still depending.    That on the 29th of September, 1847, Glenn, as the permanent trustee of said Edward, claimed the notes in question from the bank, on the ground that the assignment of them to said John, was void under the insolvent laws.

That since the payment of its claim, the bank has never asserted any right to these notes, but has been ready and anxious to deliver them up, to either of the claimants, with the consent of the other, or to any third party whom said claimants might designate, but that said claimants would not consent to such an arrangement.

The bill further states that besides the notes thus remaining uncollected, the bank has collected other notes, amounting with interest, on the 29th of May, 1849, to the sum of $645 95, which is now in the hands of the bank, and which it is ready and willing to bring into court, or at the request of the parties, to pay the same to both or either of the claimants, as they may agree, or as may be directed by the court.    That on the 28th of April, 1848, said John D. Kerr instituted an action of assumpsit, in Baltimore County Court, against the bank, and recovered a verdict and judgment for the said sum of $645 95. That John Glenn, as trustee of Edward M. Kerr, appeared for the bank and defended the case as his own, and has since taken

an appeal therein, in the name of the bank, to the Court of Appeals.

The bill prays, that the defendants, Kerr and Glenn, may be required to interplead and settle their rights to the said sum of $645 95, and to said notes, so that the bank may know to whom to pay and deliver over the same, and that said John D. Kerr, may be restrained by injunction from further proceedings in his said action of trover, and that said Glenn may also be restrained from commencing any action against the bank on account of the notes in question, and for further relief. The bill then concludes with a prayer for an order of publication against said John D. Kerr, who is averred to be a non-resident of the state, and for process of subpœna against said Glenn.

To this bill, the defendant, John D. Kerr, filed his answer on the 27th of September, 1849, in which, after admitting facts stated in the bill, as to their assignment to respondent, and notice thereof to the bank, and demand of said notes from the bank by respondent, and the institution of the actions of trover and assumpsit, he avers, that the said assignment was made to him by said Edward M. Kerr, for a *bona fide* and valuable consideration, that its validity was questioned in the said action of assumpsit, and after full argument was sustained by the verdict and judgment in that case which still remains unreversed. The answer also insists that the said Gill, neither as attorney of Potter, nor as receiver, as stated in the bill, had any rightful power or authority to interpose between the bank and respondent, as well because the subject of the assignment was not in any way partnership property, as also, because it was a foregone and past transaction, and had become the right of the respondent, even if in any sense it would have become considered as partnership property, in case the same had been still the right of said Edward M. Kerr. That if at any time the bank could properly and successfully call upon the respondent to interplead with any person claiming adversely, such time was past and gone by, prior to the filing of this bill. That the supposed title of said Gill was utterly gone, by reason of a decision of the Court of Appeals, reversing the order of the Chan-

cellor, refusing to dissolve the injunction in said cause, and appointing him, said Gill, as receiver, and was, therefore, as respects this bill, wholly irrelevant and immaterial.

As to the claim interposed by Glenn, the answer insists that his appointment as trustee was made long subsequent to the institution of the actions at law, and of course long after the demand was made by respondent, and refusal of the bank to deliver up the notes in question. That the verdict and judgment in the action of assumpsit, is final and conclusive upon the questions therein involved, and thereby decided, as between the bank and this respondent, and can only be questioned by the bank in its appeal, taken as aforesaid. And that it is equally conclusive, in this court; and that it is not competent for the bank, by a bill of interpleader, or otherwise, to compel the respondent to litigate again the same questions, for its satisfaction or its supposed better security. That said verdict and judgment afford the bank full and complete protection against any future claim on the part of said Glenn, the trial in that case having been conducted by him, in the name of the bank, but really as his own case, so that in fact, it was a decision on the very claim, on the part of said Glenn, in respect of which, the bank now seeks to require this respondent to interplead with him.

As to the attachment in said bill mentioned, respondent says, that as said Tams is no party to this bill, nor in any manner called upon to interplead, he is advised it is unnecessary to answer thereto, but insists that said attachment was long subsequent to the accrual of respondent's rights, and was, in fact, posterior to the institution of said suits at law, and was, in no wise, intended to interfere with the rights of this respondent, and is therefore immaterial and irrelevant in this case.

On the 3d of November, 1849, the same defendant, Kerr, filed his petition, in which he states the appeal taken by the bank, the complainants, from the action of assumpsit, as stated in the bill, by which it appears, that the complainant is seeking relief in this court, and prosecuting an appeal to the Court of Appeals, in respect of the very same subject matter, whereby

the defendant is doubly vexed. The petition therefore prays for an order to compel the complainant to elect between said appeal and this suit.

Upon the hearing of this petition, the following opinion was delivered and order passed:]

THE CHANCELLOR:

This case is brought before this court, upon the petition of the defendant, Kerr, to compel the plaintiffs to elect between this suit and an appeal prosecuted by them to the Court of Appeals, from a judgment rendered in favor of the petitioner, by Baltimore County Court, in a certain action of assumpsit, instituted by the petitioner, in that court, against the plaintiffs, on the 28th of April, 1847, and in which action, a verdict and judgment had been rendered in favor of the petitioner, before the present bill was filed.

The bill in this case, which was filed on the 4th of August, 1849, prays, that the defendants, Kerr and Glenn, may be required to interplead and settle their respective rights and demands, not only with respect to the sum of money for which Kerr recovered the judgment in the action of assumpsit, but that they shall, in like manner, interplead and settle their respective rights to certain promissory notes, and bills of exchange, held by the complainants, to which the complainants claimed no title, and on account of which, the petitioner, Kerr, had commenced against the complainants, an action of trover and conversion, in Baltimore County Court, and which action is still depending in that court.

With regard to the money for which the petitioner, Kerr, has recovered a verdict and judgment, it is conceded the bill of interpleader comes too late, the rule being, that a bill of this description should not be delayed until after a verdict or judgment, has been obtained. 3 *Daniel's Ch. Pr.*, 1755.

But it does not, in my opinion, follow, that because the complainants in the bill, have comprehended a subject, in respect of which they are not entitled to the aid of the court, that it will not be extended to them with reference to another

distinct subject, unless some other objection exists, than its association in the same bill with the matter, in regard to which, the complainant has delayed his application too long.

It appears, therefore, to me, that the complainants should not be precluded from the right to compel the defendants to interplead, so far as concerns the promissory notes and bills of exchange, the subject of the action of trover and conversion now depending in Baltimore County Court, because they have, in the same bill, asked the same relief with reference to another matter, in regard to which, they come too late.

This is not like the case of *Bradford and Williams* vs. *Williams et al.* decided in November last, and which was referred to in the argument. In that case, there was a *single* suit at law, and a bill in equity, comprehending the same matter, as was shown by one of the breaches assigned in the replication, and it was thought, that the court could not discriminate, and permit the action at law, and the bill in equity, to proceed at the same time, because it was possible, that some things might be litigated in the one, which were not embraced in the other. It was plain, as I thought, that the same thing, the alleged violation by the trustee of his duty, was proposed to be litigated in both courts, and as there was but one action at law, and one bill in equity, in which this double vexation was carried on, there appeared to me no way of affording relief, but by putting the plaintiff to his election.

But this is an entirely different case. The petitioner, Kerr, himself, brought the two actions at law. In one, he has recovered a judgment, and so far, it is conceded, the bill of interpleader cannot be maintained. The action of trover, is still depending, and it is no reason why the complainants may not, in a proper case, compel the defendants to interplead with reference to the subject matter of the trover suit, because they have taken an appeal from the judgment of the county court, in a suit already decided, and which is wholly independent of, and distinct from the action which is undecided. The assumpsit, and the trover, are distinct actions, brought separately by the petitioner, himself, and must be regarded and treated as involving different matters of controversy.

For these reasons, I am of opinion, that the case of *Cockerell* vs. *Cholmely*, 4 *Eng. Cond. Ch. Rep.*, 494, cannot be relied on in support of the application to compel the bank to elect, even if it could be regarded as holding an adversary relation to the petitioner, which, however, may well be doubted. The bank, cannot in any view be considered as a plaintiff, with respect to the action of trover, because, in that action, there has been no judgment and no appeal. But as it is admitted that the bill of interpleader cannot be maintained with respect to the action of assumpsit, an order will be passed, requiring the bank to elect whether it will prosecute the appeal from the judgment of the County Court in that action, or pursue its remedy upon this bill.

With regard to the injunction to restrain the defendant, Kerr, from proceeding in his action of trover and conversion, and the defendant, Glenn, from commencing any action against the complainants in respect to the subject spoken of in the proceedings, it may be sufficient now to say, that though the bill prays *for relief* by way of injunction, it does not pray *for the process* of injunction, without which prayer the process cannot be granted. *Story's Eq. Pl. section* 41, *note* 2.

The Chancellor thereupon passed the following order:

| | |
|---|---|
| The President and Directors of *The Union Bank of Maryland*, vs. *John D. Kerr and John Glenn.* | *In Chancery,* 15*th February*, 1850. |

Upon the petition of the defendant, John D. Kerr, and for the reasons stated, and after hearing and considering the argument of counsel, it is ordered, that the plaintiffs, within eight days after notice of this order, elect whether they will proceed at law with their appeal from the judgment of Baltimore County Court, in the action of assumpsit, in the proceedings mentioned, or in this court, in this suit, with respect to the sum of money for which said judgment was rendered, and, that if the said complainants elect to proceed with their said appeal, the bill, with respect to the sum so recovered, and to that extent, will be dismissed with costs, and if they elect to proceed in this court,

that they proceed no further with said appeal, without the leave of this court first had and obtained.

JOHN JOHNSON, *Chancellor.*

WILLIAM SCHLEY for the Petitioner and for the Defendant, Kerr.

GRAFTON L. DULANEY against the Petitioner and for Complainants.